El, Appellant, *v.* The State of Ohio et al.; Appellees.

(No. 75AP-565—Decided May 4, 1976.)

*Rudd, Karl, Sheerer, Lyburger & Campbell Co., L. P. A.,* for appellant.

*Mr. William J. Brown,* attorney general, and *Mr. Gene W. Holliker,* for appellees.

Reilly, J. This is an appeal from a judgment of the Court of Claims of Ohio dismissing appellant's complaint. The record indicates that appellant, in his first cause of action, alleged that the General Assembly, the Governor, and the people of Ohio denied him due process and equal protection of the law because of a failure to enact a statute which would have required the Court of Common Pleas that committed him to Lima State Hospital to consider appointing a guardian for his estate. His second cause of action was against the Ohio Department of Mental Health and Mental Retardation for interfering with his attempts to communicate outside the Lima State Hospital during the time of his confinement.

Specifically, appellant asserted the following, in paragraphs 4, 5, 6 and 7 of his First Cause of Action, respectively:

"4. For a number of years before his confinement on April 29, 1969, the plaintiff had operated a dry cleaning business at 8326 Hough Avenue, Cleveland, Ohio, known as Soul Brothers Cleaners. He was assisted therein by an employee known as Margaret Brannon Coleman. After the first three indictments described above the plaintiff asked her to take care of his business for him if he should be confined. She agreed and he made her co-signatory of two of his bank accounts as Margaret C. El, and of a third as Margaret Brannon so she would have access to his funds. On May 10, 1969, she withdrew $10,000 from his account at Park View Federal Savings and Loan Association. On May 26, 1969, she withdrew the entire balance, $9,034.63, from his account at Central National Bank. On May 29, 1969, she withdrew the entire balance, $5,161.25, from his account at Park View Federal Savings and Loan Association.

"5. On September 23, 1969, as Margaret Brannon, her maiden name, Margaret Brannon Coleman filed suit against one Michael Cobbins, case 877403 in the Court of Common Pleas of Cuyahoga County, Ohio, alleging that for safekeeping on his promise to return the money on demand she had paid Cobbins $10,000 on May 10, 1969, $9,000 on May 26, 1969, and $5,000 on May 29, 1969; and that he had returned only $10,000 to her and refused the rest; on default of answer she obtained judgment against Cobbins in the amount of $14,750, which judgment remains unsatisfied.

"6. After the plaintiff was released from his confinement on May 18, 1973 he went to his place of business at 8326 Hough Avenue, Cleveland, Ohio, and found that its name had been changed to Grant Cleaners, Margaret Brannon Coleman had caused herself to be known as Margaret Grant, and she refused to return the business to him but called the police to compel him to leave the premises. He filed suit against her (Case No. 921,444 in the Court of Common Pleas of Cuyahoga County) to recover possession

of the business and to have an accounting, and recovered judgment (a) declaring the business was his and requiring her to deliver it to him, (b) for the sum of $10,000, and (c) transferring to the plaintiff the defendant's judgment against Michael Cobbins in Case 877,403. Plaintiff has not been able to find Michael Cobbins, and Margaret Grant has petitioned for discharge in bankruptcy, Case B74-9878 in the United States District Court for the Northern District of Ohio, Eastern Division. Plaintiff is opposing discharge in bankruptcy of his $10,000 judgment against her, but that matter is still pending.

"7. Plaintiff says that as a direct and proximate result of the failure of the State of Ohio to require that consideration be given to the need for appointment of a guardian for the estate of the plaintiff when it caused him to be confined and therefore to be unable to care for his estate himself no such guardian was appointed, plaintiff's funds and business were misappropriated, his business was mismanaged and its equipment permitted to deterioriate [sic] so that the value of the business was greatly impaired; plaintiff was compelled to live in severe poverty dependent upon the generosity of his friends until he recovered his business and became able thereby to earn some income, and plaintiff has been compelled to incur substantial legal fees, costs and expenses in order to minimize his losses, all to the plaintiff's expense, embarrassment, mental anguish, and physical pain and suffering."

In his Second Cause of Action, appellant, at paragraph 10, included the following allegation:

"10. During the plaintiff's confinement in Lima State Hospital plaintiff made repeated efforts to communicate to persons outside the Hospital his belief that he was wrongfully detained therein, and thus to obtain release, but by reason of the oppressive and wrongful policies and practices of the institution and its personnel and the inadequate control, supervision, and correction thereof by the State of Ohio, through its Department of Mental Hygiene and Correction and otherwise, plaintiff was denied, deprived, and delayed in such communication. Without limiting

the generality of the foregoing allegation plaintiff says more specifically that he was prevented from communicating with the Cleveland Plain Dealer, a newspaper, and was delayed in filing in Court his petition for a writ of habeas corpus.''

Appellees moved to dismiss the complaint for failure to state a claim upon which relief could be granted, and lack of subject matter jurisdiction. The motion was sustained, whereupon, appellant timely appealed, including six assignments of error, as follows:

''The Court of Claims erred as follows:

''1. In holding it has no jurisdiction over the General Assembly.

''2. In holding that upon the legislative power there is no limitation that is applicable to the situation presented here.

''3. In holding that no claim is stated against the governor and the people.

''4. In holding that there is no rule of law applicable to suits between private parties that can be used to resolve the merits of the plaintiff's claim against the State of Ohio, and that the civil rights legislation makes no provision for compensatory monetary damages for violations of constitutional rights.

''5. In acknowledging liability of the Ohio Department of Mental Health and Retardation only as to negence, and in declaring that the acts of the Department complained of by plaintiff were not negligent.

''6. In dismissing the complaint.''

The assignments of error are interrelated. Therefore, they are essentially considered together.

In Ohio, legislative jurisdiction is granted the General Assembly by Section 1, Article II, of the Ohio Constitution. It reads as follows:

''The legislative power of the state shall be vested in a General Assembly consisting of a senate and house of representatives but the people reserve to themselves the power to propose to the General Assembly laws and amendments to the constitution, and to adopt or reject the same

at the polls on a referendum vote as hereinafter provided. They also reserve the power to adopt or reject any law, section of any law or any item in any law appropriating money passed by the general assembly, except as hereinafter provided; and independent of the general assembly to propose amendments to the constitution and to adopt or reject the same at the polls. The limitations expressed in the constitution, on the power of the general assembly to enact laws, shall be deemed limitations on the power of the people to enact laws."

Appellant's contention that he should be awarded damages for the legislature's failure to act would necessarily involve an encroachment by the court upon the General Assembly's inherent discretionary power to enact legislation. It is within the legislature's discretion to enact, or decline to enact, legislation. The Governor is granted executive jurisdiction by the Constitution. It is axiomatic that the powers of the two branches of government are separate. Manifestly, the Governor may recommend legislation to the General Assembly, and has veto power over legislative enactments; but this does not include authority to consider and enact legislation. The use of the initiative and referendum would be the means by which the people would enact or amend a statute of claims to alleviate appellant's situation. This is scarcely a practical or reasonable solution. Consequently, appellant's first, second and third assignments of error are overruled.

The state's immunity from suit has been waived by R. C. 2743.02(A), which is, of course, a state statute involving state jurisdiction. It reads as follows:

"The state hereby waives its immunity from liability and consents to be sued, and have its liability determined, in the court of claims created in this chapter in accordance with the same rules of law applicable to suits between private parties, subject to the limitations set forth in this chapter. To the extent that the state has previously consented to be sued, this chapter has no applicability."

The substance of this statute was described by Judge Whiteside, in *Smith* v. *Wait* (1975), 46 Ohio App. 2d 281, 283, as follows:

"The state's waiver of its sovereign immunity from liability has not opened up the public coffers to all who may seek recompense but, rather, permits the liability of the state to be determined in accordance with the rules of law applicable to suits between private parties, no new claim for relief or right of action being created by the waiver of immunity. R. C. 2743.02(A) merely permits actions against the state to be brought which were previously barred by the doctrine of sovereign immunity, but such actions must be predicated upon previously recognized claims for relief, for which the state would have been liable, except for sovereign immunity. * * *"

At any rate, appellant personally made arrangements for the care and control of his property before he was committed. Admittedly, they were not beneficial from appellant's viewpoint. Nonetheless, the arrangements were made by appellant, and the result was not, in fact, caused by any failure or negligence by the state of Ohio. Therefore, even if, conceivably, there could be an action against the legislature, the Governor, or the people of Ohio, appellant was not deprived of his property by any agency of the state, but by a private party. Regardless of what the state did or did not do, it was not the proximate cause of appellant's loss. This is the determinative fact in this case. There simply could not be a valid claim for relief against the state considering the facts of this particular case, and there was no denial of due process or equal protection of the law. Accordingly, appellant's fourth, fifth and sixth assignments of error are overruled.

Counsel for appellees also raised the issue in its brief that appellant's claim was barred by the statute of limitations, which was not addressed by the Court of Claims in ruling upon its motion to dismiss. In view of our overruling all of appellant's assignments of error, it is not now necessary to reach this issue. The judgment of the trial court is affirmed.

*Judgment affirmed.*

STRAUSBAUGH, P. J., and WHITESIDE, J., concur.

WHITESIDE, J., concurring. The judgment of the Court of Claims must be affirmed for the reasons set forth in the majority opinion, with respect to the fourth, fifth, and sixth assignments of error, and I concur in that portion of the opinion.

Although I also concur in the overruling of the first three assignments of error, my reasons vary slightly. Although there may an instance wherein the General Assembly or the governor may be the source of state liability and, thus, subject to suit, pursuant to R. C. 2743.02 (A), this case does not prevent such a situation.

Before one person is required to respond in damages to another, he must have breached a duty owing to such other person, which breach of duty has caused the injury to such other. Neither the General Assembly, nor the governor had a duty to plaintiff to enact laws for his benefit. Any duty they had was to the public generally and not to any specific person. The failure of the General Assembly to enact a law which would benefit a particular person gives rise to no claim for relief against the state. This is not a matter of immunity, sovereignty or a separation of powers; rather, it is simply a matter of the nonexistence of any claim for relief predicated upon such alleged failure which breached no duty specifically owing to plaintiff.